## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

RAY D. HURT                                        *

    Plaintiff                                 *

        v                                      *          Civil Action No. DKC-15-596

CORRECTIONS OFC. ROUNDS, *et al.*          *

    Defendants                                *

                                          ***

## MEMORANDUM OPINION

Defendants filed a Motion to Dismiss or for Summary Judgment (ECF No. 14) in response to the above-entitled civil rights action. The motion is unopposed by Plaintiff.[1] The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted.

### Background

Plaintiff Ray D. Hurt ("Hurt"), a prisoner confined to North Branch Correctional Institution ("NBCI"), alleged in his initial Complaint that he was assaulted by Officer Rounds on January 20, 2015. ECF No. 1 at p. 3. Hurt states that Rounds sprayed pepper spray into his cell without reason and, when he was escorting Hurt to medical, intentionally broke Hurt's ribs. He further claims that Sgt. Iams, whom he names as a Defendant, and the unknown shift commander allowed the improper assault to take place. *Id.*

According to Hurt, his left lower rib suffered a clean break and is misaligned. He asserts the fracture is "evident to the touch." ECF No 1 at p. 3. Hurt further claims that after he had an

---

[1]   Plaintiff was advised of his right to file an Opposition Response to the dispositive motion and of the consequences of failing to do so. ECF No. 15. He has filed nothing further in this case.

x-ray performed on February 10, 2015, the unknown x-ray technician, provided a "fraudulent x-ray" in order to assist correctional defendants. *Id*.

Hurt filed a verified Amended Complaint, providing further detail of the claims raised. ECF No. 4. He states that on January 20, 2015, Rounds pepper-sprayed him through the feed-up slot of his one-man cell after the "two had been engaged in a verbal dispute." *Id*. at p. 3. Hurt states that following the pepper spray, Rounds handcuffed him behind his back through the feed-up slot and opened the cell door. *Id*. Hurt alleges he was escorted to the medical room for housing unit one, where there are no surveillance cameras and, upon arriving, Rounds punched Hurt in the stomach,[2] resulting in one broken rib. *Id*.

Hurt claims he was then strip searched and handcuffed again behind his back. Hurt was then escorted with his hands pulled upwards and his head pushed down to a different housing unit. ECF No. 4 at p. 3. Hurt claims that during the escort, Rounds kneed him in the face in response to "words" spoken by Hurt. *Id*.

Hurt states he was denied access to an x-ray of his ribs until February 10, 2015. ECF No. 4 at p. 3. Hurt further states that, upon being informed he was being taken to Western Correctional Institution for an x-ray, he "opted to secure a metal pen tip to the skin area surrounding his left lower rib for the purpose of ensuring that the x-ray generated by medical personnel was in fact his own." *Id*. Hurt states that the x-ray technician told him that, after an initial x-ray, he had to remove the pen tip from his person so that another x-ray could be performed. Hurt states he never saw either set of x-rays. *Id*.

Hurt was later informed by Krista Swan, a nurse, that the x-ray did not reveal any fracture to his rib. ECF No. 4 at p. 3. Hurt states, however, that he experienced persistent pain from the

---

[2]    Hurt claims he was lying "prostrate on his stomach, with hands still cuffed behind his back" when he was punched in the stomach. ECF No. 4 at p. 3.

date of the assault to as late as March 15, 2015.  He indicates "it feels to his fingers as if a jagged

piece of bone rests where the break occurred."  *Id*.  In addition, Hurt states that he cannot stretch

out with his left arm raised while lying on his side without first bracing his midsection.  *Id*.

Hurt claims he attempted to file a complaint under the Administrative Remedy Procedure

("ARP") on February 13, 2015, regarding the events that took place on January 20, 2015, and the

x-ray on February 10, 2015.  ECF No. 4 at p. 3.  He alleges that "for the second time" he was

denied the ability to file the ARP by Rounds who he claims removed the ARP from his cell door

and "d[id] something with it."  *Id*. at pp. 3 – 4.  Hurt states that Rounds neither filed the ARP nor

returned the carbon copy to Hurt as required by applicable regulations.  *Id*. at p. 4.  Hurt further

claims that he "repeatedly tried and failed to obtain another blank ARP" and therefore resorted to

filing the instant lawsuit.  *Id*.

Hurt states that after the 30 day time period for filing an ARP expired, he also sent a

letter to the Internal Investigation Unit ("IIU").  ECF No. 4 at p. 4.  He claims he contacted IIU

because he learned that no serious incident report had been generated regarding Rounds' assault

and because Rounds had not been disciplined.  *Id*., *see also* ECF No. 4-1.

Hurt claims that on February 23, 2015, he was placed on cell restriction.  ECF No. 4 at p.

4. He asserts that the restriction was imposed "not 12 hours past his mailing of the original . . .

complaint" to this court.  *Id*.

Hurt states that on February 25, 2015, he returned to his cell from his once a week

outside recreation to discover a partially written notice of infraction left on his bed.  ECF No. 4

at p. 4. He claims the notice of infraction was incomplete as it did not include a written narrative

of what he was accused of doing on January 20, 2015, but simply listed a series of rule

violations, including a "class 100" rule. *Id*. Hurt surmises that the notice of infraction was left in his cell by Defendant Rounds' father. *Id*.

Hurt further alleges the paperwork left in his cell noted a hearing that took place on January 29, 2015. ECF No. 4 at p. 4. He suggests that surveillance video from the housing unit tier will confirm that he was never escorted to the hearing, nor was he offered the option of attending the hearing. *Id*. Hurt claims he also never received notice of the disciplinary charges against him. *Id*.

Defendant Rounds submits a declaration under oath regarding the January 20, 2015 incident. ECF No. 14 at Ex. 1.[3] He states that he was attempting to move Hurt out of his cell because he was "spreading a mixture of urine and feces" onto the prison tier "by pushing it under the cell door." *Id*. at ¶4. Rounds approached the cell door, opened the security slot on the door, and ordered Hurt to come to the door to be handcuffed. *Id*. Hurt refused to comply with the order, ran over to his bunk, reached underneath the bed, and grabbed "a cereal container." *Id*. at ¶5. Hurt returned to the cell door and threw an unknown substance at Rounds. *Id*. Rounds states that, given that Hurt was pushing urine and feces out onto the tier, he believed the substance Hurt threw at him was also urine and feces, or what is known as a "correctional cocktail." *Id*.

Rounds states that when Hurt threw the substance toward him through the security slot, he defended himself by deploying pepper spray into the cell, hitting Hurt in the face with pepper spray. ECF No. 14 at Ex. 1, ¶¶ 5 and 6. Rounds then ordered Hurt to stop and to comply with orders to be handcuffed. *Id*. at ¶6. Hurt complied with the order by placing his hands through the security slot, submitting to handcuffing. *Id*.

---

[3]    *See also* ECF No. 14 at Ex. 3, pp. 3 – 4 (Use of Force Incident Report, Statement of Officer Rounds).

Rounds and Officer Toby Tucker escorted Hurt from his cell to the medical room to be examined after Hurt was restrained. ECF No. 14 at Ex. 1, ¶7. Hurt was examined by Shawna Shumaker, R.N. and Rounds offered him the opportunity to take a decontamination shower. *Id.* at ¶8. Hurt declined the decontamination shower. *Id.* Pictures were taken of Hurt by Officer Nicholas Soltas. *Id.*, *see also.* Ex. 1 at pp. 6 – 7.

Rounds states that Hurt was escorted to the property room strip cage to be strip searched. ECF No. 14 at Ex. 1, ¶9. Following the strip search, Hurt was returned to a cell located in the segregation unit where he had been housed prior to the incident. *Id.* Rounds denies ever kicking or striking Hurt and claims the escort of Hurt to and from the medical room was without incident. *Id.* at ¶10. Rounds also denies administering or interfering with medical care and confiscating any ARP belonging to Hurt. *Id.* at ¶¶11 and 12.

The notice of infraction, which includes a description of the events leading to the use of pepper spray against Hurt, indicates it was written on January 20, 2015, and was reviewed by Shift Supervisor T. Sawyers. ECF No. 14 at Ex. 1, p. 3. Hurt was charged with violating rule 105 (possession, use or manufacture of a weapon), rule 312 (interfering with performance of staff duties), and rule 405 (disrespect or vulgar language). *Id.* The notice further indicates that Hurt refused to sign for receipt of the notice. *Id.* at p. 5.

The January 29, 2015 record of the disciplinary hearing indicates that Hurt was not present at the hearing because he refused to attend. *Id.* at Ex. 3, p. 10. Hurt was found guilty on all rule violations charged and an aggregate of 300 days of segregation was imposed as a penalty. *Id.* at pp. 11 – 12. Hurt was served with the hearing results on the date of the hearing, but refused to sign the receipt. *Id.* at p. 14. On February 23, 2015, an additional "administrative action" was imposed on Hurt by Warden Richard Miller, after consideration of the

recommendations of the Reduction in Violence Committee. *Id*. at p. 15.  Hurt was sanctioned to 60 days of "container restriction" and 60 days cell restriction concurrent to the sanctions imposed by the hearing officer. *Id*.

The medical record generated by Shawna Shumaker, RN during her January 20, 2015 examination of Hurt following his pepper spray exposure indicates that Hurt "denies injuries." ECF No. 14 at Ex. 2, p. 2.  Shumaker further observed that Hurt was cuffed behind his back, had no visible injuries, and left the medical room with a steady gait. *Id*.

Shumaker also saw Hurt on January 30, 2015, for his complaint that his rib was broken. ECF No. 14 at Ex. 2, p. 4.  She relates that Hurt had circled the area of his left ribcage he believed to be broken with blue ink. *Id*.  She notes that Hurt's ribcage was symmetrical with no open areas and that he was able to "lie back on exam table without incident." *Id*.  When she informed Hurt that he would need to be referred for the purpose of determining if an x-ray was indicated, Hurt became angry and stood up. *Id*.  Hurt was then escorted from the sick call area. Shumaker further notes that while Hurt stated in his sick call slip that his jaw was misaligned, he did not mention that issue during their encounter. *Id*.  Further, Shumaker notes that Hurt's speech was clear and he did not say he had difficulty swallowing. *Id*.

An x-ray of Hurt's chest was ordered by Dr. Mahboob Ashraf on February 6, 2015.  ECF No. 14 at Ex. 2, p. 11.  The x-ray was performed on February 12, 2015, and showed no abnormality of Hurt's ribcage. *Id*.  The report further notes that there were two chest images included, one of which had a pen tip overlying the "gastric bubble." *Id*.

Defendants submit copies of the Use of Force Incident Report generated on January 20, 2015.  ECF No. 14 at Ex. 3, pp. 3 – 9.  In addition to Rounds' report of the incident, Officer Tasker, who assisted in removing Hurt from his cell when Hurt threw "a liquid substance" on

Rounds, provides an account of the incident. *Id*. at pp. 5 – 6. Tasker relates that Hurt was engaged in "pushing urine and feces out on to the tier from underneath his cell door" when he arrived in the area with Rounds to remove Hurt from his cell. *Id*. at p. 5. Tasker further states that after Hurt was ordered to come to the door to be handcuffed, he chose instead to attempt to throw a liquid substance on Rounds. *Id*. He states that when Hurt came to the door holding the container, Rounds yelled, "don't do it." *Id*. Tasker relates that Hurt deployed a short burst of pepper spray into Hurt's cell after the liquid was thrown and that following the pepper spray, Hurt complied with orders to submit to handcuffing. *Id*.

Tasker's report also echoes Rounds' account of the escort of Hurt to the medical room and the property strip search as being without further incident. ECF No. 14 at Ex. 3, p. 6. He states that Hurt was offered a decontamination shower and Hurt declined, using vulgar language. *Id*. at pp. 5 – 6.

The reports submitted by Rounds and Tasker[4] were reviewed by Lt. Thomas Sawyers, who concluded that the use of force was appropriate and consistent with all applicable policies. ECF No. 14 at Ex. 3, p. 8. Lt. Sawyers' report indicates that the incident, presumably the use of pepper spray by Rounds, was captured on video surveillance and archived.[5] *Id*. It is not clear from the context of the report whether the video was reviewed by Sawyers to reach his conclusion.

Pictures were also taken of the floor outside of Hurt's cell and the plastic cereal containers he used to throw liquid at Rounds. ECF No. 14 at Ex. 1, pp. 6 – 8. The photographs neither support nor disprove Hurt's allegations.

---

[4]   The report does not include a statement from Hurt, but an unsigned and undated form indicates he refused to provide a written or verbal statement. ECF No. 14 at Ex. 3, p. 9.

[5]   Defendants do not provide a copy of the video surveillance as an exhibit.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Exhaustion of Administrative Remedies

Defendants raise the affirmative defense of non-exhaustion and assert Plaintiff's claims

that have not been properly presented through the administrative remedy procedure must be

dismissed pursuant to 42 U.S.C. §1997e.  ECF No. 14.  The Prisoner Litigation Reform Act

provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions.

It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to a general

condition of confinement claim.  *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction

is made with respect to exhaustion requirement between suits alleging unconstitutional

conditions and suits alleging unconstitutional conduct).  Exhaustion is also required even though

the relief sought is not attainable through resort to the administrative remedy procedure.  *See*

*Booth v. Churner*, 532 U.S. 731, 741 (2001).  A claim which has not been exhausted may not be

considered by this court.  *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is

"obligated to ensure that any defects in administrative exhaustion were not procured from the

action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th

Cir. 2007).  The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner,
> through no fault of his own, was prevented from availing himself of it.  *See*

> *Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008), *see also Blake v. Ross*, 787 F. 3d 693(4th Cir. 2015), cert. granted *Ross v. Blake*, 136 S.Ct. 614 (2015) (review of whether there is common law "special circumstances" exception to the PLRA that relieves mandatory obligation to exhaust administrative remedies where plaintiff erroneously believes exhaustion was satisfied through participation in an internal investigation).

Thus, Plaintiff's claims must be dismissed if Defendants raise the affirmative defense and also prove that Plaintiff has failed to exhaust available remedies. *See Jones*, 549 U.S. at 216 – 17 (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In his verified Amended Complaint, Hurt anticipates the allegation he failed to exhaust administrative remedies and claims he was prevented from doing so.  ECF No. 4.  Rounds disputes the claim he interfered with or confiscated ARPs filed by Hurt.  ECF No. 14 at Ex. 1. Defendants provide a five page index of the ARPs filed by Hurt dating back to March 22, 2010. *Id*. at Ex. 3, pp. 19 – 24.  While it is clear that Hurt's filings are prolific, there is a clear gap in the consistency of his pursuit of ARPs between December 2, 2014 and April 14, 2015, a period covering the date of the incident.  *Id*. at p. 19.  In light of Hurt's verified allegation and the objective evidence submitted by Defendants, this court finds there is a genuine dispute regarding the availability of administrative remedies and the merits of Hurt's claims shall be addressed below.

Excessive Force Claim

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992).  This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986).  The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010).  The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

The undisputed evidence submitted by Defendants offers a legitimate rationale for Rounds' deployment of pepper spray against Hurt.  Hurt's disruptive behavior was not only a security issue, but also a health hazard to the other prisoners housed near his cell.  His attempt to assault Rounds in a similar manner justified the minimal force used to gain his compliance with a lawful order.  Hurt's failure to dispute the cause for Rounds' use of pepper spray against him, coupled with his failure to mention the nature of his behavior in recounting the incident, removes from the realm of possibility the existence of a genuine dispute of material fact.  On the claim regarding use of pepper spray against Hurt, Rounds is entitled to summary judgment in his favor.

Hurt's claim that Rounds punched him in the stomach upon arriving in the area of the medical room (ECF No. 3, p. 3), is disputed by both Rounds and Tasker.  ECF No. 14 at Ex. 1 and Ex. 3, pp. 5 – 6.  Hurt's further assertion that he suffered a broken rib is unsupported by any objective evidence.  Hurt's denial of any injuries while being examined in the medical room (ECF No. 14 at Ex. 2, p. 2); the physical description of his ribs on January 30, 2015, by Registered Nurse Shumaker (ECF No. 14 at Ex. 2, p. 4); and the negative x-ray results (*id*. at Ex. 2, p. 11), all of which remain undisputed by Hurt, establishes that Hurt did not suffer a broken rib.  The absence of injury alone, however, is not the equivalent of a finding that no excessive use of force occurred.

Rounds does not allege that a use of force against Hurt was required upon their arrival to the medical room; rather, it is undisputed that Hurt was compliant with the escort after his exposure to pepper spray.  The determination of whether this particular assault occurred hinges on the credibility of the parties, a matter that may not be determined on summary judgment.  The Motion for Summary Judgment shall be denied as to this portion of the excessive force claim as alleged against Defendant Rounds.

Medical Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995)

quoting *Farmer* 511 U.S. at 844.  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."  *See Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

There is no objective evidence that Hurt either suffered a significant injury or has an injury for which the named Defendants somehow interfered with treatment.  Hurt does not dispute the medical report of Shumaker indicating that he did not complain of any injuries during his initial medical examination following the incident.  Hurt's allegation that he never got to see the actual x-ray films simply does not support even the suspicion that the report is somehow false.  Hurt points to no evidence to support his fear that an x-ray other than his own was relied upon to conclude his ribs were not broken.  The claim against the "unknown x-ray technician" is subject to dismissal.

<u>Retaliation</u>

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right."  *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim).  "'A complaint which alleges retaliation in wholly

conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Maryland, Inc. v. Wicomico County*, Md. 999 F.2d 780, 785 (4th Cir. 1993).

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) quoting *Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994). The existence of a legitimate reason for a disciplinary measure in this case refutes Hurt's claim that his assignment to cell restriction shortly after he filed the instant complaint was retaliatory.

Hurt engaged in the behavior necessitating the use of pepper spray against him and he was assigned to disciplinary segregation for the service of sanctions for previous rule violations. There is no evidence that either the warden who approved the recommendation for cell restriction or the committee that made the recommendation acted inappropriately or even knew of Hurt's pending case in this court. Hurt cites no other support for his claim than the closeness in time between the imposition of the sanction and his placement in the mail of his complaint. Defendants are entitled to summary judgment on this claim.

Supervisory Defendants

Hurt's claims against Defendants Sgt. Iams and Shift Commander Doe are based on his assertion that each is "responsible for overseeing the conduct and duties of . . . subordinate officers." ECF No. 3 at p. 2, ¶¶5 and 6.  It is well established that the doctrine of respondeat superior does not apply in §1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.2004) (no respondeat superior liability under § 1983).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

Supervisory liability under §1983 must be supported with evidence that:  (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Hurt has pointed to no action or inaction on the part of Defendants Iams or Shift Commander Doe that resulted in a constitutional injury. Accordingly, those claims shall be dismissed.

A separate Order follows.

Date:   March 17, 2016                                    /s/
                                                DEBORAH K. CHASANOW
                                                United States District Judge

16